Jeffrey N. Street, ISB# 10382
Evan S. Mortimer, ISB# 9758
LITSTER FROST INJURY LAWYERS
3501 W. Elder Street, Suite 208
Boise, ID 83705
Telephone: (208) 489-6400
Fax: (208) 489-6404
jeff.street@litsterfrost.com
evan.mortimer@litsterfrost.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| KATELYN ANSELMO, an individual, and TINA ANSELMO, an individual, <br><br> Plaintiffs, <br><br> vs. <br><br> BOB'S RESTAURANT & LOUNGE LLC, d.b.a. BOB'S RESTAURANT & LOUNGE, an Idaho limited liability company; BOB A. COPELAND, an individual; and DOES I – X, <br><br> Defendants. | Case No. <br><br> COMPLAINT AND DEMAND FOR JURY TRIAL |

Plaintiffs Katelyn and Tina Anselmo, through their attorneys of record, Litster Frost Injury Lawyers, allege against Defendants as follows:

## **PARTIES**

1. Plaintiff Katelyn Anselmo ("Plaintiff Katelyn") resides in Star, Ada County, Idaho.

2. Plaintiff Tina Anselmo ("Plaintiff Tina") resides in Star, Ada County, Idaho.

3. Defendant Bob's Restaurant & Lounge LLC, d/b/a Bob's Restaurant and Lounge ("Defendant

**COMPLAINT AND DEMAND FOR JURY TRIAL - 1**

Bob's Restaurant & Lounge"), is an Idaho limited liability company doing business at 1411 Shilo Drive, Nampa, ID 83687.

4. Defendant Bob's Restaurant & Lounge has had 15 or more employees for at least 20 calendar weeks in 2022.

5. Defendant Bob's Restaurant & Lounge has had 15 or more employees for all weeks in 2023, to date.

6. Defendant Bob Allen Copeland ("Defendant Copeland") is an owner and operator of Bob's Restaurant and Lounge.

7. Defendant Copeland is a citizen of the State of Idaho.

8. Defendant Copeland currently resides in Nampa, Canyon County, Idaho.

9. Upon information and belief, Defendant DOES I-X are one or more people or business entities that are an owner, employee, partner, joint venturer, and/or otherwise legally liable for the conduct of Defendant Bob's Restaurant & Lounge and/or Defendant Copeland that is the subject matter of this litigation.

10. Defendant DOES I-X are also managers and representatives for Defendant Bob's Restaurant & Lounge who were and are legally responsible for the wrongful conduct of Defendant Bob's Restaurant & Lounge and/or Defendant Copeland.

11. Upon discovering Defendant DOES I-X's true identities, Plaintiffs' Complaint will be amended to include such information.

12. This Complaint is a "notice pleading" to Defendants. Meaning, Plaintiffs are providing notice that they assert all legal and equitable theories and causes of action arising out of, resulting in, implied, and/or inferred from the facts and occurrences as set forth in the Complaint. Further, Plaintiffs state that this "notice pleading" also provides notice to currently unidentified Defendants (i.e., Defendant Does) that all legal and equitable remedies applicable under all the

**COMPLAINT AND DEMAND FOR JURY TRIAL - 2**

facts and circumstances of this case are being sought against them.

## JURISDICTION AND VENUE

13. Plaintiff incorprates the allegations set forth above.

14. This action is being brought under 42 U.S.C. § 1981 *et seq.*; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*; the Idaho Human Rights Act, Idaho Code §§ 18-7391, 67-5901 *et seq.*; and other applicable state law grounds.

15. The federal courts have jurisdiction over the subject matter of this Complaint under 28 U.S.C §§ 1331, 1343(4); and 42. U.S.C. § 2000e.

16. The federal courts have supplemental jurisdiction over the state law claims and tortious causes of action asserted herein pursuant to 23 U.S.C. § 1367. The factual basis of the state law claims brought under the Idaho Human Rights Act and tortious conduct are identical to the operative facts underlying the federal claims.

17. Venue is proper pursuant to 28 U.S.C § 1391, as all Defendants reside in the State of Idaho, and all acts or omissions occurred within the judicial district of the United States District Court for the District of Idaho. Venue is also proper pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred in this judicial district.

18. On or about July 21, 2022, Plaintiffs filed a Verified Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and the U.S. Equal Employment Opportunity Commission ("EEOC").

19. On January 7, 2023, Plaintiff Tina received a "Notice of Right to Sue" from the IHRC that allowed Plaintiff Tina to file a private right of action under the Idaho Human Rights Act. Less than ninety days have elapsed since the Notice of Right to Sue was issued. Plaintiff has exhausted all administrative remedies under law.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 3**

20. On March 7, 2023, Plaintiff Tina received a "Dismissal and Notice of Rights" from the EEOC allowing Plaintiff Tina to file a lawsuit against Defendant Bob's Restaurant & Lounge under federal law. Less than ninety days have elapsed since the Notice of Right to Sue was issued. Plaintiff has exhausted all administrative remedies under law.

21. On February 9, 2023, Plaintiff Katelyn received a "Notice of Right to Sue" from the IHRC that allowed Plaintiff Katelyn to file a private right of action under the Idaho Human Rights Act. Less than ninety days have elapsed since the Notice of Right to Sue was issued. Plaintiff has exhausted all administrative remedies under law.

22. On March 31, 2023, Plaintiff Katelyn received a "Dismissal and Notice of Rights" from the EEOC allowing Plaintiff Katelyn to file a lawsuit against Defendant Bob's Restaurant & Lounge under federal law. Less than ninety days have elapsed since the Notice of Right to Sue was issued. Plaintiff has exhausted all administrative remedies under law.

## FACTS

23. Plaintiffs incorporate the allegations set forth above.

### A. Tina Anselmo Sexual Harassment

24. In approximately October 2021, Plaintiff Tina began working for Defendant Bob's Restaurant & Lounge as a server/hostess.

25. During the first few months of Plaintiff Tina's employment with Defendant Bob's Restaurant & Lounge, Defendant Copeland made comments such as, "Tina, you look pretty today, and I love how you are so professional," and "I wish other servers were like you." Over time, Defendant Copeland's comments to Plaintiff Tina began to push the professional boundary for comments towards an employee, and eventually, the comments crossed the line from professional to unprofessional to sexual harassment.

26. The first occurrence of Defendant Copeland making sexual comments towards Plaintiff Tina was during a shift where Plaintiff Tina was the opening server. When the two were alone in the morning, Defendant Copeland approached Plaintiff Tina that morning and said, "Good morning. Damn Tina, you have a really nice ass." Plaintiff Tina was caught completely off guard and felt uncomfortable around Defendant Copeland until his son, Tyler, came into work. Plaintiff Tina attempted to distance herself from Defendant Copeland for the rest of the day.

27. Later, Plaintiff Tina was again the opening server when Defendant Copeland approached her and told her a story about a "gorgeous girl" who he loved "with all his heart," how he would have done "anything for her," and how the girl ended up committing suicide. Defendant Copeland then told Plaintiff Tina that she reminded him of her and how he felt that Defendant Copeland and Plaintiff Tina had a deep connection. He told her that he would do anything for Plaintiff Tina. Again, this story felt inappropriate in the workplace and made Plaintiff Tina very uncomfortable.

28. In the following days, weeks, and months, Defendant Copeland would continue to make comments to Plaintiff Tina about how beautiful Plaintiff Tina was, how Defendant Copeland could not stop thinking about her all the time, how good Plaintiff Tina's ass looked, how sexy Plaintiff Tina was, how every time he saw Plaintiff Tina he got an erection, how serious he was about doing "anything" for Plaintiff Tina, and how he wished they would have met 20 years prior so they could have been together. During these conversations, Bob would often put his hands on Plaintiff Tina's shoulder/arm. The comments continued to make Plaintiff Tina uncomfortable in a workplace that was owned by the very person making the comments, and Plaintiff Tina ultimately reached the point she felt physically and emotionally violated by the nature and frequency of the comments being made by Defendant Copeland.

29. In an attempt to keep her employment and maintain her income while also escaping Defendant Copeland's sexual harassment, Plaintiff Tina began to avoid being in the same room as Defendant Copeland. When she was the opening server, she would try to prep the restaurant in a different room as Defendant Copeland or work on the other side of the dining room floor. Plaintiff Tina would try to limit her conversations with Defendant Copeland as best she could in the workplace. Still, on occasions, Defendant Copeland would approach Plaintiff Tina and make inappropriate sexual comments. Plaintiff Tina realized that these comments would often be made in locations of the restaurant that were not in view of the security cameras because Defendant Copeland's wife, MerriDee, was often watching the cameras.

30. The event that ultimately led Plaintiff Tina to realize she could not continue working at Defendant Bob's Restaurant & Lounge without being subject to sexual harassment was an occasion where Defendant Copeland approached Plaintiff Tina in a walk-in refrigerator and told her that she gives him an erection when she is around and asked if she would like to see, motioning towards his groin.

31. In early-April 2022, Plaintiff Tina quit her employment with Defendant Bob's Restaurant & Lounge due to the ongoing sexual harassment she was experiencing from the owner of the restaurant and the realization that Defendant Copeland was never going to stop harassing her.

32. When Plaintiff Tina notified Defendant Bob's Restaurant & Lounge that she was leaving, MerriDee Copeland, in her capacity as an owner-operator of Defendant Bob's Restaurant & Lounge, offered to increase Plaintiff Tina's wages in exchange for her continue to work under the existing conditions.

33. Defendant Copeland's inappropriate behavior subjected Plaintiff Tina to unwelcome sexual advances and unwelcome verbal and physical conduct of a sexual nature.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 6**

34. Based on information and belief, some of the conduct by (or on behalf of) Defendants directed at Plaintiff Tina (e.g., electronic communications) originated from Defendant Copeland and MerriDee's personal residence.

35. Defendant Copeland's conduct was so severe and pervasive that it altered the conditions of Plaintiff Tina's employment and created a hostile work environment that forced Plaintiff Tina to quit her job.

36. Defendant Copeland's sexual harassment of Plaintiff Tina created a hostile work environment in violation of Title VII and IHRA, and other state and federal laws.

### B. Katelyn Anselmo Sexual Harassment

37. In approximately January 2022, Plaintiff Katelyn began working for Defendant Bob's Restaurant & Lounge as a Cook Prep.

38. In approximately March 2022, Defendant Copeland began making inappropriate, uninvited, and patently offensive sexual remarks to Plaintiff Katelyn.

39. For example, in mid-March 2022, Defendant Copeland made several inquiries as to when Plaintiff Katelyn was turning 19, insinuating the question concerned sexual activity plans. Defendant Copeland would also ask questions about Plaintiff Katelyn and her girlfriend's "plans" for her birthday and he would make comments about how he missed having "emotionless sex" with strangers that he and his ex-wife (Angel) would do together.

40. Later in March 2022, Defendant Copeland gave Plaintiff Katelyn a raise while contemporaneously asking Plaintiff Katelyn if he could watch Plaintiff Katelyn and her girlfriend have sex.

41. Throughout March 2022, Defendant Copeland continued making harassing, uninvited, sexual remarks to Plaintiff Katelyn, including but not limited to, inquiring about Plaintiff Katelyn's sexual activity and telling Plaintiff Katelyn stories of his own sexual history.

42. The harassing behavior escalated in April 2022. Defendant Copeland continued to regularly harass Plaintiff Katelyn by inquiring about Plaintiff Katelyn's sexual activity, making remarks about wanting to observe Plaintiff Katelyn's sexual encounters, giving unsolicited accounts of his own sexual history/conquests, inquiring if Plaintiff Katelyn would perform sexual acts with him and his wife (MerriDee Copeland), asking Plaintiff Katelyn to make sexual comments towards him while working, providing details of his wife's genitalia, describing his masturbation habits, describing his sexual activity with his wife, and showing Plaintiff Katelyn pornographic imaging while working.

43. Defendant Copeland also texted Plaintiff Katelyn a link to a pornographic website. Attached as Exhibit 1 is a true and correct copy of a text sent by Defendant Copeland to Plaintiff Katelyn on April 10, 2022 that shows the website link sent by Defendant Copeland.

44. In April 2022, Defendant Copeland's harassment turned physical. He began touching Plaintiff Katelyn's shoulder and attempting to hug her while making inappropriate sexual requests. On one occasion, while Plaintiff Katelyn's hands were full of dishes, Defendant Copeland approached Plaintiff Katelyn and ran a $100 down her thigh and put it in her pocket.

45. On or about April 22, 2022, Plaintiff Katelyn quit her employment with Defendant Bob's Restaurant & Lounge due to the frequent and ceaseless sexual harassment Plaintiff Katelyn was experiencing.

46. Based on information and belief, some of the conduct by (or on behalf of) Defendants directed at Plaintiff Katelyn (e.g., electronic communications) originated from Defendant Copeland and MerriDee's personal residence.

47. Defendant Copeland's inappropriate behavior subjected Plaintiff Katelyn to unwelcome sexual advances, unwelcome requests for sexual favors, and unwelcome verbal and physical conduct of a sexual nature.

48. Defendant Copeland's conduct was so severe and pervasive that it altered the conditions of Plaintiff Katelyn's employment and created a hostile work environment that forced Plaintiff Katelyn to quit her job.

49. Defendant Copeland's sexual harassment of Plaintiff Katelyn created a hostile work environment in violation of Title VII and IHRA, and other state and federal laws.

### COUNT I: Violation of Title VII of the Civil Rights Act of 1964
### (Sexual Harassment & Hostile Work Environment)
*Plaintiffs v. Defendant Bob's Restaurant & Lounge*

50. Plaintiffs incorporate the allegations set forth above.

51. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 et seq., prohibits discrimination based on sex that creates a hostile or abusive work environment.

52. Plaintiffs are female.

53. At the time of the subject events, Plaintiffs were employees of Defendant Bob's Restaurant & Lounge.

54. Plaintiffs were the victims of unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature by Defendant Copeland.

55. Defendant Copeland's conduct was sufficiently severe and/or pervasive to alter the conditions of the victim's employment and create a hostile work environment.

56. Plaintiffs perceived the working environment as abusive, hostile, and/or offensive.

57. At the time of the subject events, Defendant Copeland was an owner and operator (manager/supervisor) of Defendant Bob's Restaurant Lounge.

58. As a direct and proximate result of Defendants discrimination against Plaintiffs, Plaintiffs suffered damages, including but not limited to lost salary and wages, lost employment benefits, retirement benefits, attorney fees, court costs, emotional distress, and other non-economic damages.

59. Defendants' conduct was malicious and oppressive, and/or done with reckless disregard for Plaintiffs' federally protected rights; therefore, Plaintiffs are entitled to punitive damages pursuant to 42 U.S.C. § 1981.

### COUNT II: Violation of Title VII of the Civil Rights Act of 1964
### (Quid Pro Quo Sexual Harassment)
*Plaintiffs v. Defendant Bob's Restaurant & Lounge*

60. Plaintiffs incorporate the allegations set forth above.

61. Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 1981 et seq., prohibits an employer from conditioning employment benefits on submission to sexual advances.

62. Plaintiffs are female.

63. At the time of the subject events, Plaintiffs were employees of Defendant Bob's Restaurant & Lounge.

64. Plaintiffs were subjected to offers of increased wages in exchange for allowing Defendant Copeland to participate in sexual activities with them and/or continue to subject them to unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature.

65. At the time of the subject events and in the course of their quid pro quo offerings, Defendant Copeland and MerriDee Copeland were owners and operators (manager/supervisor) of Defendant Bob's Restaurant Lounge and were relying on their apparent or actual authority in order to condition employment benefits on sexual favors or submission to sexual conduct.

66. As a direct and proximate result of Defendants conditioning employment benefits to Plaintiffs on submission to sexual advances, Plaintiffs suffered damages, including but not limited to lost salary and wages, lost employment benefits, retirement benefits, attorney fees, court costs, emotional distress, and other non-economic damages.

67. Defendants' conduct was malicious and oppressive, and/or done with reckless disregard for

Plaintiffs' federally protected rights; therefore, Plaintiffs are entitled to punitive damages pursuant to 42 U.S.C. § 1981.

**COUNT III: Violation of the Idaho Human Rights Act, Idaho Code § 67-5901 *et. seq.*
(Sexual Harassment & Hostile Work Environment)**
*Plaintiffs v. Defendant Bob's Restaurant & Lounge*

68. Plaintiffs incorporate the allegations set forth above.

69. The Idaho Human Rights Act, e.g., I.C. § 67-5909, prohibits discrimination based on sex that creates a hostile or abusive work environment.

70. Plaintiffs are female.

71. At the time of the subject events, Plaintiffs were employees of Defendant Bob's Restaurant & Lounge.

72. Plaintiffs were the victims of unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature by Defendant Copeland.

73. Defendant Copeland's conduct was sufficiently severe and/or pervasive to alter the conditions of the victim's employment and create a hostile work environment.

74. Plaintiffs perceived the working environment as abusive, hostile, and/or offensive.

75. At the time of the subject events, Defendant Copeland was an owner and operator (manager/supervisor) of Defendant Bob's Restaurant Lounge.

76. As a direct and proximate result of Defendants discrimination against Plaintiffs, Plaintiffs suffered damages, including but not limited to lost salary and wages, lost employment benefits, retirement benefits, attorney fees, court costs, emotional distress, and other non-economic damages.

77. Defendants' conduct was malicious and oppressive, and done with reckless disregard for Plaintiffs' rights; therefore, Plaintiffs are entitled to punitive damages pursuant to Idaho Code

§ 67-5908.

### COUNT IV: Violation of the Idaho Human Rights Act, Idaho Code § 67-5901 *et. seq.* (Quid Pro Quo Sexual Harassment)
*Plaintiffs v. Defendant Bob's Restaurant & Lounge*

78. Plaintiffs incorporate the allegations set forth above.

79. Plaintiffs are female.

80. At the time of the subject events, Plaintiffs were employees of Defendant Bob's Restaurant & Lounge.

81. Plaintiffs were subjected to offers of increased wages in exchange for allowing Defendant Copeland to participate in sexual activities with them and/or continue to subject them to unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature.

82. At the time of the subject events and in the course of their quid pro quo offerings, Defendant Copeland and MerriDee Copeland were owners and operators (manager/supervisor) of Defendant Bob's Restaurant Lounge and were relying on their apparent or actual authority in order to condition employment benefits on sexual favors or submission to sexual conduct.

83. As a direct and proximate result of Defendants conditioning employment benefits to Plaintiffs on submission to sexual advances, Plaintiffs suffered damages, including but not limited to lost salary and wages, lost employment benefits, retirement benefits, attorney fees, court costs, emotional distress, and other non-economic damages.

84. Defendants' conduct was malicious and oppressive, and done with reckless disregard for Plaintiffs' rights; therefore, Plaintiffs are entitled to punitive damages pursuant to Idaho Code § 67-5908.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 12**

## COUNT V: Negligent Infliction of Emotional Distress
*Plaintiffs v. Defendants*

85. Plaintiffs incorporate the allegations set forth above.

86. As a citizen of the State of Idaho, Defendant Copeland owed a duty to use due or ordinary care to not injure others by agency set out in operation by him or through his worker or rendering of services. In other words, Defendant Copeland had a duty to act with reasonable care so as to not create a risk of harm to others.

87. As Plaintiffs' employer, Defendant Copeland owed a duty to Plaintiffs to not subject them to unwelcome sexual conduct that would cause them physical and/or emotional harm.

88. As Plaintiffs' employer, the duty Defendant Copeland owed Plaintiffs was a greater degree of respect than that owed to a person in the general public.

89. Defendant Copeland knew Plaintiff Katelyn was a lesbian and knew Plaintiff Tina was married.

90. Defendant Copeland knew or should have known that unwelcome sexual conduct directed at Plaintiffs would cause them physical and/or emotional harm.

91. Defendant Copeland breached the duty owed to Plaintiffs by repeatedly and frequently subjecting them to unwelcome sexual conduct.

92. Further, as an owner and operator of Defendant Bob's Restaurant & Lounge, Defendant Bob acquiesced to his unwelcome sexual conduct being within the course and scope of his management of Defendant Bob's Restaurant & Lounge.

93. In other words, as an owner and operator of Defendant Bob's Restaurant & Lounge, Defendant

Copeland accepted respondeat superior liability for Defendant Copeland's unwelcome sexual conduct.

94. Defendant Copeland's conduct was the actual and proximate cause of physical and/or emotional distress to Plaintiffs.

95. The emotional distress physically manifested itself in various ways—loss of sleep, lack of motivation, inability to find a replacement job, stress, anxiety, etc.

96. Plaintiffs suffered damages as a result of the emotional distress.

### COUNT VI: Intentional Infliction of Emotional Distress
*Plaintiffs v. Defendants*

97. Plaintiffs incorporate the allegations set forth above.

98. As a citizen of the State of Idaho, Defendant Copeland owed a duty to use due or ordinary care to not injure others by agency set out in operation by him or through his worker or rendering of services. In other words, Defendant Copeland had a duty to act with reasonable care so as to not create a risk of harm to others.

99. As Plaintiffs' employer, Defendant Copeland owed a duty to Plaintiffs to not subject them to unwelcome sexual conduct that would cause them physical and/or emotional harm.

100. As Plaintiffs' employer, the duty Defendant Copeland owed Plaintiffs was a greater degree of respect than that owed to a person in the general public.

101. Defendant Copeland knew Plaintiff Katelyn was a lesbian and knew Plaintiff Tina was married.

102. Defendant Copeland knew, or was recklessly unaware that, the unwelcome sexual conduct directed at Plaintiffs would cause them physical and/or emotional harm.

103. Defendant Copeland breached the duty owed to Plaintiffs by repeatedly and frequently subjecting them to unwelcome sexual conduct.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 14**

104. Defendant Copeland's conduct was extreme and outrageous because he used his position as Plaintiffs' employer and financial support system as a means to continuously subject Plaintiffs to unwelcome sexual conduct.

105. Further, as an owner and operator of Defendant Bob's Restaurant & Lounge, Defendant Bob acquiesced to his unwelcome sexual conduct being within the course and scope of his management of Defendant Bob's Restaurant & Lounge.

106. In other words, as an owner and operator of Defendant Bob's Restaurant & Lounge, Defendant Copeland accepted respondeat superior liability for Defendant Copeland's unwelcome sexual conduct.

107. Defendants' conduct was the actual and proximate cause of severe emotional distress to Plaintiffs.

108. Plaintiffs suffered damages as a result of the emotional distress.

109. As a result of Defendants' extreme and outrageous conduct, Plaintiffs are entitled to be awarded punitive damages.

## DEFAULT

110. A reasonable amount for attorney fees and costs in the event of default is forty percent of the amount recovered. In the event this matter is contested, Plaintiffs should be awarded such other and/or further relief as determined by the Court according to applicable state and federal law.

## DAMAGES

111. As an actual and proximate result of Defendant's negligence, gross negligence, recklessness, and/or intentional conduct, Plaintiffs suffered injuries that required Plaintiffs to incur, and continue to incur, special damages and general damages, in an amount to be proven at trial, but in excess of $10,000.00.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 15**

112. Plaintiffs are entitled to pre-judgment interest on all damages which can be ascertained by mere mathematical process.

## COSTS AND ATTORNEY FEES

113. As a result of Defendants' discrimination detailed above, Plaintiffs were required to retain Litster Frost Injury Lawyers to prosecute this action, and therefore, Plaintiffs are entitled to an award of reasonable attorney fees and costs for the prosecution of this action, pursuant to 42 U.S.C. § 12205, 42 U.S.C. § 1988, 29 U.S.C. § 2617, Idaho Code § 12-120, Idaho Code § 12-121, Idaho Rule of Civil Procedure 54, and other applicable state and federal laws.

## PRAYER

**WHEREFORE**, Plaintiffs pray the Court enter judgment:

A. For Plaintiffs' general and special damages in an amount not yet known but in excess of $50,000.00;

B. For punitive damages in an amount to be determined at trial;

C. For attorney fees and costs pursuant to 42 U.S.C. § 12205, 42 U.S.C. § 1988, 29 U.S.C. § 2617, Idaho Code § 12-120, Idaho Code § 12-121, Idaho Rule of Civil Procedure 54, and other applicable state and federal laws; and

D. For such further relief as the Court may deem just and fair.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all issues pursuant to the Seventh Amendment of the United States Constitution, Idaho Const. Art. I, Sec. 7, and Fed. R. Civ. P. 38. Plaintiffs do not stipulate to a jury of any less than twelve (12) members.

DATED this 5th day of April, 2023.

**COMPLAINT AND DEMAND FOR JURY TRIAL - 16**

LITSTER FROST INJURY LAWYERS

*/s/ Jeffrey N. Street*
Jeffrey N. Street,
Attorney for Plaintiff

**COMPLAINT AND DEMAND FOR JURY TRIAL - 17**